**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | | |
|---|---|---|
| **MIDDLEBURG TRAINING** | ) | |
| **CENTER, INC.,** | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 1:07cv37** |
| | ) | |
| **MYRNA FIRESTONE,** | ) | |
| **Defendant.** | ) | |

**MEMORANDUM OPINION**

At issue in this removed shareholder appraisal action, brought pursuant to Va. Code §
13.1-729 *et seq.*, is whether defendant, Myrna Firestone, agreed to litigate her appraisal rights
action in a Virginia state court when she purchased shares in plaintiff, Middleburg Training
Center, Inc. ("MTC"), a Virginia corporation. Fully briefed and argued, this issue is now ripe for
disposition. For the reasons that follow, plaintiff's motion to remand to the Circuit Court of
Loudon County, Virginia, must be granted. Because the Virginia Stock Corporation Act
("VSCA"), Va. Code § 13.1-601, *et seq.*, is deemed a part of the contract between a corporation
and its shareholders, it follows that when Firestone acquired her shares of MTC she agreed to a
forum selection provision requiring her to litigate her appraisal rights in the Circuit Court of
Loudon County, Virginia, in accordance with Va. Code § 13.1-740.

**I.**

The material facts are undisputed and may be succinctly stated. Plaintiff, MTC, is a
Virginia corporation incorporated in 1975 for the purpose of operating a horse farm. Its principal
assets were approximately 149.5 acres of land in Loudon County, Virginia, the MTC Training

1

Center, which included horse farm-related improvements and farm-related personal property.

Defendant, Myrna Firestone, a citizen of Washington, D.C., purchased one share of MTC in May 1987 and served, at all times relevant here, as a member of MTC's Board of Directors.[1] Firestone was one of five shareholders and her share, at all times relevant here, represented a 20% interest in MTC.

Beginning at least as early as 2003, MTC's directors and shareholders considered selling either the MTC Training Center, or alternatively, their shares in MTC. In this connection, MTC received several offers of purchase, none of which were judged adequate by MTC's Board of Directors and shareholders.[2] MTC next retained a local realtor to advise the Board of Directors on setting an appropriate sales price for the MTC Training Center. The realtor advised the Board of Directors that the MTC Training Center should be priced in the range between $4.3 and $4.5 million.

Thereafter, on July 18, 2006, MTC held a special shareholder's meeting to consider an offer by Randolph D. Rouse to purchase MTC's assets for $4 million. Firestone opposed the sale, arguing (i) that the price was too low and (ii) that, for tax purposes, a sale of stock was preferable to a sale of assets. Instead of accepting the Rouse offer, Firestone suggested that a realtor be engaged to sell MTC's stock for $6.7 million, an amount based on appraisals and

---

[1]The Board of Directors consisted of MTC's five shareholders: Firestone, Lewis S. Wiley, Eve D. Fout, Barbara C. Graham, and James W. Murphy.

[2]For example, MTC's Board of Directors and shareholders declined the following offers: (i) in 1998 and 1999, MTC declined contingent offers to purchase the MTC Training Center for $2,300,000.00; (ii) in July 2003, the shareholders declined an offer to purchase MTC's shares for $2 million; (iii) in February 2006, the Board and shareholders declined a contingent offer to purchase the MTC Training Center for $3,250,000.00, and (iv) in May 2006, MTC declined an offer of $3.4 million, which contained contingencies and required seller financing.

realtor opinions Firestone had obtained. The Board did not accept Firestone's suggestion. Accordingly, on July 28, 2006, Firestone notified MTC of her intent to exercise her appraisal rights and to demand payment of the fair value of her share in the event the Rouse asset sale was approved by the Board of Directors.

On that same day, July 28, 2006, the Board of Director's held a meeting, with Firestone present, to consider Rouse's offer. During the meeting MTC's president, Lewis S. Wiley, presented a professional appraisal valuing MTC's real estate at $4.35 million. Additionally, Wiley noticed a special meeting of MTC's directors and shareholders for August 7, 2006 to act on Rouse's offer, stating:

> Since consummation of the Purchase Contract would leave Middleburg Training Center, Inc. without a significant continuing business activity, you as a shareholder are entitled to vote on the proposed Purchase Contract and also are entitled to appraisal rights pursuant to Article 15 of the Virginia Stock Corporation Act, § 13.1-729, *et seq.* of the Code of Virginia . . . .

In response, Firestone again notified Wiley of her intent to exercise appraisal rights if the proposed sale was approved. At the August 7, 2006 meeting, the sale of MTC's assets to Rouse was approved with Firestone as the only dissenting director or shareholder. Two days later, Wiley informed the shareholders that the sale was complete and that MTC would receive net proceeds of $3,760,942.00,[3] minus any federal corporate income taxes.

On August 17, 2006, MTC mailed Firestone an appraisal notice, as required by Va. Code § 13.1-734.[4] Because this appraisal notice omitted information required by the statute, MTC

---

[3]This figure presumably reflects the difference between the $4 million sales price and the fees and costs associated with the sale.

[4]This provision requires a corporation, within 10 days of a corporate action entitling a shareholder to appraisal rights, to deliver to a dissenting shareholder a written appraisal notice and form.

mailed Firestone an amended appraisal notice on October 6, 2006, resolving most, if not all, of

the deficiencies of the earlier notice and stating that MTC had determined the estimated value of

Firestone's share to be $563,477.00.[5]  The amended notice further stated that Firestone was

required to complete and return the appraisal form by November 15, 2006,[6] certifying that she

owned a share in MTC and that she desired to seek appraisal rights.  Firestone returned the

appraisal form on October 17, 2006, providing the requested information and notifying MTC that

she believed the estimated valuation of her share was inadequate.  Notably, one day before

returning the appraisal form, Firestone filed a civil action in the United States District Court for

the Eastern District of Virginia alleging nine claims against MTC and its directors and

shareholders.  *Firestone v. Wiley*, Case No. 1:06cv1168 (E.D. Va. Oct. 16, 2006) (Complaint).[7]

On November 15, 2006, after receiving the information in Firestone's appraisal form,

MTC, following the command of Va. Code § 13.1-737,[8] paid Firestone $563,477.00, an amount

equal to the company's estimate of the fair value of Firestone's share of MTC stock, plus

---

[5]It is worth noting that MTC elected to calculate the value of Firestone's share based on the $4.35 million figure in MTC's appraisal, rather than on the actual $4 million sales price.

[6]*See* Va. Code 13.1-734 (stating that the appraisal form must specify a date by "which the corporation must receive the form which date may not be fewer than 40 nor more than 60 days of the date" the appraisal notice was sent).

[7]Firestone's nine claims are: (i) Count I: declaratory judgment as to her appraisal rights and the fair value of MTC; (ii) Count II: declaratory judgment regarding the proposed dissolution of MTC and distribution of its assets among MTC's remaining shareholders; (iii) Counts III and IV: derivative and personal claims for breach of fiduciary duties by the individual defendants; (iv) Count V: derivative claim for waste of MTC's assets; (v) Counts VI and VII: derivative and personal claims for civil conspiracy; (vi) Count VIII: unjust enrichment; and (vii) Count IX: declaratory judgment regarding Firestone's inspection of MTC's books and records.  As Firestone's counsel conceded at oral argument, Count I and portions of the other remaining counts seek the same relief or remedy as MTC seeks in this removed action.

[8]This provision requires that the corporation pay the dissenting shareholder the fair value of their shares, plus interest, within 30 days of the date the appraisal form is due.

$6,135.65, the amount of interest on this fair value estimate that accrued from August 8, 2006 through November 15, 2006.  Additionally, MTC advised Firestone of her right to demand further payment, provided she made a written demand no later than December 18, 2006.  On December 11, 2006, counsel for Firestone explained that Firestone's October 17, 2006 letter constituted her written demand, pursuant to Va. Code § 13.1-739.A.[9]  Accordingly, in accordance with Va. Code § 13.1-740,[10] MTC filed a petition in the Circuit Court of Loudon County, Virginia on December 14, 2006, to adjudicate Firestone's demand for payment.

On January 10, 2007, Firestone removed this action to the United States District Court for the Eastern District of Virginia, based on diversity jurisdiction.  *See* 28 U.S.C. § 1332.  Two days later, Firestone moved to dismiss the removed petition arguing that the petition's claims should have been brought as compulsory counterclaims under Rule 13(a), Fed. R. Civ. P., in the federal civil action filed by Firestone on October 16, 2006.  In response, MTC moved to remand this matter to the Circuit Court for Loudon County, Virginia, alleging that removal was improper as Firestone agreed, by virtue of purchasing shares in a Virginia corporation, to a contractual forum selection provision requiring her to litigate her appraisal rights in the Circuit Court of Loudon County, Virginia.

---

[9]This provision requires that a dissenting shareholder, dissatisfied with the fair value payment, make a written demand to the corporation for a higher payment.

[10]In particular, this provision provides that "[i]f a shareholder makes a demand for payment under § 13.1-739 that remains unsettled, the corporation shall commence a proceeding within 60 days after receiving the payment demand and petition the court to determine the fair value of the shares and accrued interest."

## II.

Because the appraisal rights procedure established by the VSCA, Va. Code § 13.1-601, *et seq.*, is central to disposition of this matter, a brief summary of the principal aspects of this procedure is warranted.  To begin with, the VSCA provides that where, as here, a corporation disposes of its assets, any shareholder entitled to vote on such disposition is entitled to appraisal rights, meaning the shareholder may "obtain payment of the fair value of that shareholder's shares."  Va. Code § 13.1-730.  Thus, when a proposed corporate action, including a disposition of assets, is to be submitted to a vote of the shareholders, the meeting notice must state that the corporation has concluded that any dissenting shareholders will be entitled to assert their appraisal rights.  Va. Code § 13.1-732.  Then, when the proposed corporate action is submitted to a vote at a shareholder's meeting, a dissenting shareholder wishing to assert appraisal rights (i) must deliver to the corporation, before the vote is taken, written notice of their intent to demand payment if the proposed action is effectuated and (ii) must not vote any shares in favor of the proposed action.  Va. Code § 13.1-733.  If the proposed action is approved, the corporation has ten days within which to deliver to the shareholder a written appraisal notice and form, containing the information required by Va. Code § 13.1-733, and setting a date, between forty and sixty days from the date of the appraisal notice, by which time the shareholder must complete and return the appraisal form.  Va. Code § 13.1-734.[11]  Then, within thirty days after the appraisal form is due, the corporation must pay the dissenting shareholder the fair value of their shares,

---

[11]It is worth noting that, pursuant to Va. Code § 13.1-741, "the fees and expenses of counsel" in an appraisal proceeding may be awarded in favor of a dissenting shareholder if "the corporation did not substantially comply with the requirements of" Va. Code § 17.734.  Given the disposition of this matter, it is unnecessary to reach or decide whether either MTC's original or amended appraisal notices substantially complied with the VSCA.

plus interest.  Va. Code § 13.1-737.  If the dissenting shareholder is dissatisfied with the amount

paid, they must notify the corporation in writing, stating the estimated fair value of their shares

and demanding payment of that estimate.  Va. Code § 13.1-739.  If the dissenting shareholder's

demand for payment remains unsettled, the VSCA provides that "the corporation shall

commence a proceeding . . . to determine the fair value of the shares and accrued interest."  Va.

Code § 13.1-740.   Importantly, the VSCA specifically provides that "[t]he corporation shall

commence [this] proceeding in the circuit court of the city or county where the corporation's

principle office" is located, and such court has "plenary and exclusive" jurisdiction over the

proceeding.  *Id.*

### III.

The question presented by MTC's remand motion is whether Firestone, by virtue of

purchasing stock in a Virginia corporation, is contractually bound by the forum selection

provision in Va. Code 13.1-740, stating that the circuit court of the city or county where the

corporation's principal office is located shall have "plenary and exclusive" jurisdiction over a

shareholder appraisal action.  Firestone argues that she never formally and explicitly assented to

the forum selection provision and that, in any event, a state statute may not displace diversity

jurisdiction.  MTC counters by noting that applying Va. Code § 13.1-740 as a contractual choice

of forum provision is not a matter of state law ousting or limiting federal diversity jurisdiction;

rather, it is simply the application of the settled principle that the state corporation laws,

including Va. Code § 13.1-740, are part of a contract between a corporation and its shareholders

and that the shareholder assents to these laws and the forum selection provision by purchasing

the corporation's shares.

Analysis of the question presented begins with recognition of the well-settled principle that "the general corporation law of the State, in force at the time of the incorporation, is just as much a part of the contract between the corporation and its stockholders as are [any other] documents." *Adams v. United States Distrib. Corp.*, 184 Va. 134, 149 (1945).[12]  Indeed, this principle was settled in Virginia as far back as 1912, when the Supreme Court of Virginia held that "the relations between . . . the corporation and the stockholders" were governed by the corporate charter and "all the requirements, terms, and conditions of the [Virginia] Constitution, any of any laws passed in pursuance thereof . . . ."  *Winfree v. Riverside Cotton Mills*, 113 Va. 717, 720-21 (1912).  Perhaps the most succinct statement of this settled principle is found in Michie's *Virginia Jurisprudence on Business*, the authoritative treatise on Virginia law, which states "[t]he general law of the state in force at the time of the incorporation is just as much a part of the contract between a corporation and its stockholders as are its charter and certificates of stock."  1-3 Michie's *Virginia Jurisprudence on Business* § 116 (2004).[13]

Nor is this principle limited to Virginia courts; it is equally well-established in other jurisdictions.  For example, the Fifth Circuit, almost seventy years ago, stated that the principle that a state's corporation law is a part of the contract between a corporation and its shareholders "may be conceded without discussion."  *Ainsworth v. Southern Drug Corp.*, 95 F.2d 172, 173

---

[12]The parties correctly agree that Virginia substantive law governs here.  *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938).

[13]*See also McGhee v. General Finance Corp.*, 84 F. Supp. 24 (W.D. Va. 1949) ("It is elementary that the general corporation law of the state in force at the time of the incorporation is a part of the contract between the corporation and its stockholders.").

(5th Cir. 1938).[14]  More recently, the 2006 edition of Fletcher's *Cyclopedia of the Law of Private Corporations*, the national authoritative treatise on corporate law, states the principle as follows:

> [A] state's corporation law is a part of the charter of every corporation that is incorporated in that state, [and this corporate charter is a contract of] dual character: one between the state and the corporation and its shareholders and the other between the corporation and its shareholders.

Fletcher's *Cyclopedia of the Law of Private Corporations* § 3634 (2006).

Clearly then, courts in Virginia and elsewhere sensibly recognize that the relationship between a shareholder and the corporation in which they own stock is contractual in nature and that a shareholder's contract rights and obligations *vis a vis* the corporation in which they own stock are found not only in the corporation's articles of incorporation, its corporate charter, or other documents, but also in the general corporation laws of the state of incorporation; these, too, are part of the contractual relationship between a corporation and its shareholders.[15]

This well-settled principle, applied here, compels the conclusion that the forum selection provision contained in Va. Code § 13.1-740 is incorporated into the contract between Virginia

---

[14]*See also Pinney v. Nelson*, 183 U.S. 144, 150 (1901) ("As then a corporation can have no legal existence outside of the State in which it is incorporated, the contract of the stockholders with one another, by which the corporation is created, is presumed to have been made with reference to the laws of that State, nothing being said in the charter to the contrary."); *Washington Loan & Trust Co. v. Allan,* 70F.2d 282, 284 (D.C. Cir. 1934) (holding that shareholder was liable under the "law and contract" because by the "purchase of his stock [he] agreed and assented to" liability as provided in the state constitution, which was "included in the articles of incorporation, [and thus] created a contract on the part of the shareholders which followed them wherever they might go").

[15]*See* Fletcher's Cyclopedia of the Law of Private Corporations § 3635 (2006) ("When a corporation is created or formed under a general corporation law, its charters consists of the law under which it is organized and the articles or certificate of incorporation adopted or issue pursuant to that law . . . .  Every pertinent provision of the constitution and statutes of the corporation's creation is impliedly written into the charter."); *Knights of Pythias v. Weller*, 93 Va. 605, 613 (1896) (holding that general laws affecting corporations form essential parts of the charters of the corporations, as though copied into them); *Kaplan v. Block*, 183 Va. 327, 333-34 (1944) (holding that the general corporate laws are incorporated into the corporate charter).

corporations and their shareholders, and hence constitutes a contractual forum selection clause.
In other words, when an individual purchases a share of stock in a Virginia corporation, she, in
effect, enters into a contract with the corporation. This contract incorporates the general
corporation law of Virginia. Thus, when an individual purchases stock in a Virginia corporation
she has constructive notice that she is bound by the terms of the VSCA, and in making the
purchase, she agrees to all of the statutory provisions, including the forum selection provision
contained in Va. Code § 13.1-740. It follows that when Firestone purchased a share of MTC, a
Virginia corporation, she entered into an agreement with MTC that incorporated the VSCA,
including the forum selection provision applicable to shareholder appraisal remedies.

While there is no Fourth Circuit authority squarely on point,[16] another district court in this
circuit has squarely addressed the issue. In *McGhee v. General Finance Corp.,* 84 F. Supp. 24
(W.D. Va. 1949), a district court, on facts essentially similar to those presented here, held that the
Virginia statutory appraisal remedy, including its forum selection provision, was incorporated
into the agreement that arose between the shareholder and the corporation when the shareholder
purchased shares in the corporation. The lynchpin of this result, as the district court recognized,
is the general principle that "the general corporation law of the state in force at the time of the
incorporation is part of the contract between the corporation and its stockholders." *Id.* at 26.
From this it followed there, as here, that the VSCA's forum selection provision was incorporated
into the contract between the shareholder and the corporation.[17]

_____

[16]Obviously, no Virginia state court would ever be presented with the precise question raised here.

[17]The only federal case suggesting a different result is *Mullen v. Academy Life Ins. Co.*, 705 F.2d 971, 972 (8th Cir. 1961). Yet, that case involved a statute permitting state jurisdiction over

Firestone seeks to discount *McGhee* and avoid the result reached here by arguing that the reasoning applied here and in *McGhee* has been effectively overruled by *Markham v. City of Newport News*, 292 F.2d 711 (4th Cir. 1961). This argument fails for *Markham*, which did not mention *McGhee*, is easily distinguishable from both this case and *McGhee*. To begin with, *Markham* did not involve the VSCA or shareholder rights under that law; rather, it involved a suit against a municipality for injuries sustained when the plaintiff's car fell into a manhole plaintiff claimed the municipality negligently left uncovered and unguarded. Notably, *Markham* involved no contractual relationship between a shareholder and a corporation or between the plaintiff and the City of Newport News. Instead, the court in *Markham* was presented with a state statute that could not be construed as a contractual choice of law provision, but operated instead only as an impermissible limitation on federal diversity jurisdiction. While it is true that state laws may not limit federal diversity jurisdiction, that principle, determinative in *Markham*, is inapplicable here as the VSCA in this case is part of the contract between a corporation and its shareholders. This point is well-illustrated by *Fru-Con Constr. Corp. v. County of Arlington*, 2006 U.S. Dist. LEXIS, at *13 (E.D. Va. Jan. 30, 2006), which held that *Markham* did not bar enforcement of a statutory forum selection provision incorporated by reference into a private agreement between the county and a contractor. *Id.* There the court explained "[w]hile the *Markham* principle would prevent the County from unilaterally restricting Fru-Con's right to bring suit in a federal court, it does not bar the County from reaching the same result through a forum selection clause that was the product of mutual assent." *Id*.

---

appraisal actions, and hence the statute could not be construed as a contractual choice of forum provision.

_____Given that the forum selection provision of Va. Code § 13.1-740 is incorporated into the agreement between Firestone and MTC, by virtue of her stock purchase, the only remaining question is whether this contractual forum selection provision is reasonable.  In this respect, federal law governs because Virginia law, which would otherwise apply, has adopted the federal standard for this purpose.  *See Paul Business Sys., Inc. V. Canon USA, Inc.*, 240 Va. 337 (1990).

The seminal case on forum selection provisions is *The Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1 (1972).  There, the Supreme Court held that forum selection clauses "are prima facie valid and should be enforced unless enforcement is shown by the resisting party to be unreasonable under the circumstances."  407 U.S. at 10.  As the Fourth Circuit put it, the parties' choice of forum should be enforced "absent a showing that the chosen forum is unreasonable or was imposed by fraud or unequal bargaining power."  *Vulcan Chem. Techs., Inc. v. Barker*, 297 F.2d 332, 339 (4th Cir. 2002); *see Allen v. Lloyd's of London*, 94 F.3d 923, 928 (4th Cir. 1996).

That principle, applied here, dictates that the forum selection provision at issue here be enforced.  Indeed, Firestone does not claim, nor does it appear, that the forum selection provision at issue here was imposed by fraud or unequal bargaining power or was otherwise unreasonable.

In conclusion, because the forum selection provision in Va. Code § 13.1-740, is part of the contractual arrangement between MTC and its shareholders, including Firestone, and because the forum selection provision is not unreasonable, this appraisal action must be litigated in the Circuit Court of Loudon County, Virginia.[18]  Accordingly, plaintiff's motion to remand the matter to the Circuit Court for Loudon County, Virginia must be granted.  As such, it is

---

[18]*See Excell, Inc. v. Sterling Boiler & Mechanical, Inc.*, 106 F.3d 318, 321 (10th Cir. 1997) (affirming remand of case improperly removed from state court because forum selection clause required enforcement in state court).

unnecessary to reach Firestone's argument that MTC's appraisal action claims should have been brought as compulsory counterclaims in her federal civil action. *See Appalachian Power Co. v. Region Properties, Inc.*, 364 F. Supp. 1273, 1278 (W.D. Va. 1973) ("The necessity of pleading a cause of action as a compulsory counterclaim in a federal action does not deprive the state court of jurisdiction of a claim created by state law.").

    An appropriate Order will issue.


                                        ____/s/_____
Alexandria, Virginia                    T. S. Ellis, III
March 6, 2007                           United States District Judge

13